FILED

2018 AUG 16 PM 3:04

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ANGELA MORGAN, individually and on behalf of all others similarly situated, ) ) ) | |
| | CLASS ACTION |
| Plaintiffs, ) ) ) | |
| v. ) ) | Case No. 6:18-cv-1342-Orl-40 DCI |
| ADVENTIST HEALTH SYSTEM/ SUNBELT, INC. d/b/a FLORIDA HOSPITAL ORLANDO, ) ) ) ) ) | |
| Defendant. ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff, Angela Morgan, individually and on behalf of all others similarly situated, alleges Defendant, Adventist Health System/Sunbelt, Inc. d/b/a Florida Hospital Orlando ("Florida Hospital" or "Defendant"), "robo-called" her numerous times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### INTRODUCTION

2. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports.org/cro/magazine/2015/07/rage-against-robocalls/index.htm. "Robocalls" are the #1 consumer complaint in America today and the Defendant's conduct in this case is a good reason why.

3. The TCPA was enacted to prevent companies like Florida Hospital from invading American citizens' privacy and to prevent illegal robocalls.

4. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices – for example, computerized

1

calls to private homes. Congress enacted the TCPA to prevent real harm and found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("The Act bans certain practices invasive of privacy[.]").

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

6. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These types of damages are the same shared by the Plaintiff and the class members.

7. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers" a/k/a "robodialers." Specifically,

2

the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

8. On January 4, 2008, the FCC released a Declaratory Ruling confirming that automated or prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See* In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 1 (Jan. 4, 2008) ("2008 FCC Ruling"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.* at ¶¶ 9-10.

## JURISDICTION AND VENUE

9. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1391, respectively.

10. The alleged violations described in this Complaint were committed by a corporation that resides and is located in Orlando, Florida with its principal place of business in Orlando, Florida.

## FACTUAL ALLEGATIONS

11. Plaintiff is a natural person and citizen of the State of Tennessee who resides in Athens, Tennessee.

12. Plaintiff is the subscriber and regular user of the cellular telephone number at issue, (407) XXX-2301.

13. Thus, Plaintiff is the "called party" within the meaning of the TCPA. *See Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014).

14. Defendant Adventist Health System/Sunbelt, Inc. ("Adventist") is a Florida corporation that has its principal place of business in Altamonte Springs, Florida and conducts business in the State of Florida, including under the fictitious name "Florida Hospital Orlando," which Adventist is the sole owner of and has registered with the State of Florida.

15. Florida Hospital never had prior express consent to place any calls to Plaintiff's cellular telephone number.

16. Rather than having a live person first call Plaintiff's cellular telephone number to confirm that the number belonged to the person Florida Hospital intended to call, Florida Hospital instead chose to repeatedly harass Plaintiff with robocalls and prerecorded voice messages.

17. On or about May 22, 2018, Florida Hospital placed a call to Plaintiff's cellular telephone number seeking to recover a debt from someone other than Plaintiff. Florida Hospital left Plaintiff a voicemail which used an artificial or prerecorded voice stating the call was from Florida Hospital and asking to be called back.

18. The May 22, 2018 recording did not provide a way for Plaintiff to identify her number as a "wrong number" or opt out of further calls.

19. On May 25, 2018, Florida Hospital placed another call to Plaintiff's cellular telephone number seeking to recover a debt from someone other than Plaintiff. Florida Hospital left Plaintiff a voicemail which used an artificial or prerecorded voice to state "this is

a call from Florida Hospital Orlando" and asking to be called back "at your earliest convenience."

20. The May 25, 2018 recording did not provide a way for Plaintiff to identify her number as a "wrong number" or opt out of further calls.

21. Florida Hospital left the following artificial prerecorded voice message in Plaintiff's voicemail:

> [male artificial/prerecorded voice] This is a call from [female voice] Florida Hospital Orlando. [male voice] We're trying to reach [female voice] Mxxxx Rxxxxxxxx [male voice] in regards to your account [female voice] xxxx4938. [male voice] Please contact us back at [female voice] (800) 737-9140 [male voice] at your earliest convenience. Thank you and have a good day.

22. On information and belief, the unrelated person Defendant was trying to reach was deceased at the time of the above calls.

23. On or about June 5, 2018, Plaintiff received a telephone call to her aforementioned cellular telephone number from Florida Hospital seeking to recover a debt from someone other than Plaintiff.

24. During the June 5, 2018 telephone call, Plaintiff advised Florida Hospital that it had the wrong number.

25. On June 7, 2018, in order to confirm that her number would be removed, Plaintiff called the number that Florida Hospital's May 2018 voicemails asked her to call.

26. During the June 7, 2018 telephone call, Plaintiff advised Florida Hospital that it had the wrong number and requested that Florida Hospital remove her number from the account in order to stop calling.

27. Each call Florida Hospital made to Plaintiff's cellular telephone number was made without the express consent of Plaintiff.

28. Florida Hospital made at least one call to (407) XXX-2301 using an "automatic telephone dialing system" ("ATDS"), which has the capacity: to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers, as defined by 47 U.S.C. § 227(a)(1).

29. Florida Hospital made at least one call to (407) XXX-2301 using an or an artificial or prerecorded voice.

30. Each call Florida Hospital made to (407) XXX-2301 in the last four years was made using an ATDS or an artificial or prerecorded voice.

31. By effectuating these unlawful phone calls, Florida Hospital caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

32. Florida Hospital's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, and intruded upon Plaintiff's seclusion.

33. Florida Hospital's phone calls harmed Plaintiff by wasting her time, trespassing on her phone, invading her privacy as well as causing aggravation and inconvenience.

34. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." 2008 FCC Ruling ¶ 7. Florida Hospital's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

35. Florida Hospital made at least three calls to Plaintiff's aforementioned cellular telephone number.

36. Florida Hospital has a corporate policy of using an ATDS or an artificial or prerecorded voice message to collect debts from individuals such as Plaintiff for its financial benefit.

37. Florida Hospital willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the class.

## COUNT I
### (violation of TCPA)

38. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 37.

39. Florida Hospital willfully violated the TCPA with respect to Plaintiff each time it called Plaintiff's cellular telephone number using an ATDS or an artificial or prerecorded voice without having prior express consent.

40. Florida Hospital knowingly violated the TCPA with respect to Plaintiff each time it called Plaintiff's cellular telephone number using an ATDS or an artificial or prerecorded voice without having prior express consent.

41. Florida Hospital repeatedly placed non-emergency telephone calls to the cellular telephone number of Plaintiff using an ATDS or an artificial or prerecorded voice without Plaintiff's prior express consent, in violation of federal law including 47 U.S.C. § 227(b)(1)(A)(iii).

42. As a result of Florida Hospital's illegal conduct, Plaintiff and the members of the class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

43. Plaintiff and the class members are also entitled to and do seek injunctive relief prohibiting Florida Hospital from violating the TCPA in the future.

## CLASS ACTION ALLEGATIONS

44. Plaintiff realleges and incorporates by reference the allegations contained in all other paragraphs as if fully stated herein. Plaintiff, individually and on behalf of all others similarly situated, brings the above claims on behalf of a Class.

45. In this case, Plaintiff seeks to certify the class, subject to amendment, as follows:

46. The Florida Hospital TCPA Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Defendant did not have express consent to call said cellular telephone number.

> The Florida Hospital Cease Contact Subclass consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Defendant's records note said number was a wrong number or not to call.

> The Florida Hospital Deceased Patient Subclass consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendant placed a non-emergency telephone call (4) using substantially the same system(s) that were used to telephone Plaintiff (5) within 4 years of the complaint and (6) where Defendant's records

note that the patient whose account or debt said telephone number is associated with is deceased.

47. Plaintiff represents and is a member of the Class and each Subclass. Excluded from the Class and each Subclass are Defendant and any entities in which Defendant has a controlling interest, Defendants' employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

48. Plaintiff is presently unaware of the exact number of members in the Class, but based upon the size and scope of Defendant's business, Plaintiff reasonably believes that the Class members number, at a minimum, in the thousands.

49. Plaintiff and all members of the Class have been harmed by Florida Hospital's actions.

50. This Class Action Complaint seeks money damages and injunctive relief.

51. The joinder of all Class members is impractical due to the size and relatively modest value of each individual claim.

52. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits. The Class can be easily identified through records maintained by Florida Hospital.

53. There are question of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

    a) Whether the system used to place the calls was an ATDS;

    b) Whether the system used to place the calls delivered an artificial or prerecorded message;

    c) Whether Florida Hospital engaged in a pattern of using an ATDS or artificial or prerecorded voice to place calls to cellular telephone numbers without the prior express consent of the called party;

    d) Whether Florida Hospital's conduct was willful or knowing; and

    e) Whether Florida Hospital's actions violated the TCPA.

54. As a person who received calls that were made using an ATDS or an artificial or prerecorded voice without prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of the Class and each Subclass.

55. Plaintiff will fairly and adequately represent and protect the interests of the Class and each Subclass, and Plaintiff does not have an interest that is antagonistic to any member of the Class or any Subclass.

56. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

57. A class action is the superior method for the fair and efficient adjudication of this controversy.

58. Class-wide relief is essential to compel Florida Hospital to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Florida Hospital is small because the statutory damages in an individual action for violation of the TCPA are small.

59. Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the calls at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

60. Florida Hospital has acted on grounds generally applicable to the Class and each Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class and each Subclass as a whole appropriate.

61. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of her and the Class, and against Florida Hospital, for:

(a) A declaration that Florida Hospital's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

(b) An injunction prohibiting Florida Hospital from calling any third parties or numbers that were skip traced, or obtained through means other than by obtaining the called party's prior express consent, to ensure that Plaintiff is not called again now or if Plaintiff obtains additional telephone numbers in the future;

(c) An injunction requiring Florida Hospital to file quarterly reports of third party audits with the Court on Florida Hospital's system and procedures not to call any third parties or numbers that were skip traced to ensure that Plaintiff is not called in the future;

(d) An award of actual damages in an amount to be proven at trial;

(e) An award of statutory damages for Plaintiff and each Class and Subclass member in the amount of $500.00 for each and every call that violated the TCPA;

(f) An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class and Subclass member for each and every call that violated the TCPA;

(g) An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class and each Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class and each Subclass;

(h) An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

(i) Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

Dated: August 14, 2018.

        Respectfully submitted,

        ANGELA MORGAN, INDIVIDUALLY AND ON
        BEHALF OF ALL OTHERS SIMILARLY SITUATED,
        Plaintiffs

        By:   /s/ William Peerce Howard
        William "Billy" Peerce Howard (FBN 0103330)
        Heather H. Jones (FBN 0118974)
        THE CONSUMER PROTECTION FIRM, PLLC
        4030 Henderson Blvd.
        Tampa, FL 33629
        (813) 500-1500
        (813) 435-2369 (Fax)
        Billy@TheConsumerProtectionFirm.com
        Heather@TheConsumerProtectionFirm.com

        Keith J. Keogh (FBN 0126335)
        KEOGH LAW, LTD.
        55 W. Monroe St., Suite 3390
        Chicago, IL 60603
        (312) 726-1092
        (312) 726-1093 (fax)
        keith@keoghlaw.com

        *Attorneys for Plaintiff and the Putative Class*